The next case is the United States v. Bullock. Good morning, your honors, and may it please the court. I'm Paul Angeletti. I represent Randolph Bullock. Mr. Bullock received a 97-month sentence, which was at the bottom of his guidelines range. However, the guidelines range was drastically increased by about 40% because he was given a 2G 2.2B5 pattern enhancement. And the question that this case raises is, does, and the pattern enhancement was based on a disturbing incident in which he improperly touched a four-year-old boy and a six-year-old boy at his church. You're using the singular for enhancement for an incident. And the question is, is it one incident or is it more than one? That's correct. And it's two children, and it wasn't the same spot. No, it was the same spot. Well, it was the same church, but it was different rooms, and he had done some activity in between, right? But I think that the fact that there is different rooms does not change the fact that the rooms were in proximity to each other. I don't think the different rooms makes it a pattern. And I think the question is, does? I mean, if I rob a hotel room and then go down to the lobby and have dinner and then go back upstairs and rob a second hotel room, have I committed one robbery or two? Well, when you look at, I cite Wooden v. United States, Supreme Court case. It doesn't deal with the pattern enhancement, but it deals with the Armed Career Criminal Act, which requires separate occasions. And the hypothetical review. Right, so the difference is that occasions, so here we have the word instance, and there it's occasion. Maybe there's a difference there. But even if you're operating under that occasion understanding, if you do one thing, and then you stop, and you have some intervening activity that you're doing, and then you go commit another crime, why wouldn't that even be two occasions? I think it would depend. If you look at a Wooden-type analysis, I think even with the lapse in time, they are within close proximity. These are events, something that happens on one day. In close proximity. I just wanted to say, look at the factors, or timing, and proximity, and the character and relationship of the offenses. Am I right in broadly, they talk about those as being relevant factors? That's right. Wooden talks about, because Erlinger, which is a subsequent decision, which requires that the occasions be found by a jury beyond a reasonable doubt. Erlinger summed up the Wooden inquiry. And they said, it says, were the crimes committed close in time? How about the proximity of their locations? Not, is it the same location, but is it a proximity of locations, like we have in the instant case? Were the offenses similar or intertwined? I guess what that analysis is getting at is whether somebody is going on a spree, and that that should be regarded as one occasion. Right? So your position is that your client was basically on a child molestation spree, and he was just going to go molesting children that day. Is that the idea? I don't think this, I think the two actions, regrettable as they are, and disturbing as they are, don't constitute a spree. So if they don't constitute a spree, that they're separated, that they're just two separate actions, doesn't that mean that they're two instances? No. I think what you have is one instance with two victims. But they weren't even in the same room. They didn't even see each other. And he did an activity in between, right? He was meeting with the treasurer of the church, or whatever it was, right? Yes, but they occur, does this constitute a pattern? Especially since such incidents were never repeated by Bullock. Does he, he never did anything like that again. So you're saying it's not a pattern. Only on that one day. OK. So what does that tell us, though? That it doesn't constitute a pattern. It's one occasion with two victims. But if it were a pattern, wouldn't that point in favor of calling it one occasion? And you're saying it's not a pattern. I am saying it's not a pattern. OK. He has to engage in a pattern, but pattern is defined as any combination of two or more separate instances. And I guess I'm stumbling. I mean, wouldn't, and it's a different word, different provision, but when you talk about taking into account the character of the offense as one aspect, there's a big difference between one night going through 10 different storage units and going through, in a personal attack, going through different victims. So should an instance mean something? Doesn't have to mean two different instances when you have two different victims of sexual assault or two different murders, even if they're committed in the same building and on the same night? But, well, the Supreme Court in Wooden, looking at a different statute, admittedly, they take a different view. A different set of facts, a different type of offense. But it's a different type of offense, but I think there are similarities. I think when they found that the Armed Career Criminal Act didn't apply to Wooden, they were making the same kind of inquiry as I'm discussing in my brief. And I'd also point out, just to move off the pattern enhancement, if you look at the interviews of the children which we sent to the court, if you look at the interviews of two children, you can see that the interviewer of the four-year-old is very skeptical about the four-year-old's answers. Understandably, it's a four-year-old. It's hard for a four-year-old to deal with that. But the fact of the matter is that the interviewer concludes, because he asked the child, how many times has this happened? Child says one time, then he says two times, then he says three times. Government, in their brief, they say, see, he did it three times. But the interviewer drew a different conclusion than the government, because the interviewer said, based on the differences. But the district court talked about victims, right? So the district court was basing the enhancement on the idea that there were two separate victims, not that there was one victim on different instances, right? But what I'm saying is, I don't think that the four-year-old, the evidence before the district court concerning the interview of the four-year-old, and that was all I had, was the interview of the four-year-old, because there were no legal proceedings on this case. The interview of the four-year-old, based on the conclusion that the interviewer drew that the child didn't answer, I don't think that, even that the preponderance of the evidence standard, modest as there is, I think what met the preponderance standard was the interview of the other child. I think you've only got one child that meets the preponderance of the evidence standard, and therefore, you don't have a pattern. Did the district court find that your client had molested these children on other occasions as well? The government says yes. The government, and the reason. I'm asking you. But what I'm telling you is, what I'm telling you is that the district court never said, I find multiple occasions for that one child. The government says, oh, he adopted our, they set forth in their sentencing memo. Don't tell me what the district court didn't say. What did the district court say about this? The district court said that it was found by a preponderance of the evidence that the pattern enhancement applied. But the district court referred to victims, right? When it said that, right? Yes. So the district court found that there were two victims. The district court found that there were two victims, but what I'm saying is that in terms of one of the victims, the district court was wrong, because by a preponderance, that victim's account did not even meet the preponderance of the evidence standard. Wasn't there evidence of that child that he admitted that he might have touched them, but he was tucking in the shirt, and then there was evidence that he came out of the room with his shirt untucked? Yes. So isn't that more than just the victim's own testimony? No, I still think it doesn't meet the preponderance of the evidence standard. Okay. Good morning, and may it please the court. Joshua Rothenberg for the government. Victim two, the four-year-old, ran out of a room shouting, he touched my pee-pee. Many adults heard this. The defendant later admitted that he had touched victim two's penis. That's victim one's penis that he says he only may have touched. And he was simply claiming he did not have sexual intent, but we know he is a pedophile because he admitted being a pedophile, and the district court rightly found that his explanation that he was tucking in victim two's shirt was preposterous. He also molested victim one that morning, assuming the timeline most favorable to him. It would have had to be that he molested victim one at the end of services between 11.45 and noon. Then he stopped. He went and he counted money. He was the church treasurer. We don't know exactly how long that took, but he estimated there were about $3,000 in donations that morning. And he said in his recorded interview, which is government exhibit two, which we provided to the court, he said that there were a number of coins in the tray that morning, which would have no doubt slowed down counting. At that point, victim two ran into either that room or an adjoining room, and Bullock molested victim two. That alone would suffice for the pattern enhancement because due to that gap, whether it wouldn't applies or it doesn't, we think it doesn't, but even if it did, that interruption where he's engaging in non-criminal conduct in a different location would suffice to make these two separate instances. Additionally, however, the district court did find- in a series of activities, like they're robbing all of the storage units in a storage facility or whatever, they're going into different rooms. Maybe they even take a break at some point, but we regard that as one occasion, right? I do not agree with that. I think that if there's a break, we have a different situation. In Woodin, there was no break. He goes from one storage unit to the next, to the next, to the next. Here, there's a completely non-criminal break, and the Supreme Court- So you think in Woodin, if he's robbering all the storage units, but then after the third one, he stops and has a snack or something, and then continues afterwards, then it would be different occasions? I think it depends exactly where he has the snack, how long the break is. You know, in Woodin itself, they say it's an uninterrupted course of conduct. That's the first factor in Woodin. They say the timing is uninterrupted. Look- So in this case, if he had gone into room number one with victim one, and then immediately went into room number two with victim two, it would be one instance? We don't agree with that, Your Honor. It would be a harder case for us under Woodin. I'm arguing under both here. Woodin doesn't apply to your saying. Woodin does not apply. Even if it did apply, you're saying you might argue that, but it would be harder. Yes. And it becomes obvious, because he stopped and did an activity in between. That's correct. That's certainly sufficient, even under Woodin. And because that's sufficient, even under Woodin, you don't have to reach the question. You don't have to go further. You can simply hold- But what is the difference between an instance and an occasion? So, Your Honor, we provide dictionary definitions for this. We actually use the same dictionaries that they used in Woodin. It appears that an instance is a slightly smaller block of time. It can be described as, there can be multiple instances in one event. So a series of instances may comprise an event. Whereas in Woodin, they use the example of a wedding, right? That a wedding may comprise multiple different events, but it's still one occasion. So an instance is just a slightly more cabined version. And that makes sense, given that what the 2G2.2B5 enhancement is trying to get at is different than what Woodin is trying to get at. Woodin's about the Armed Career Criminal Act. The question is, are these actually career criminals? And the Supreme Court said, well, a spree criminal isn't really a career criminal. That's just one day. That's not what the pattern of activity enhancement is about. What this court said in Rheingold is it's a metric to determine likelihood of recidivism and danger of recidivism. A spree, in fact, is increased danger of recidivism. The fact that he molested two children in one morning, if that is indeed what happened, again, that's assuming the timeline most favorable to him. If that's what happened, then that means his danger of recidivism is higher than someone who takes a longer break in between. I know the commentary to this provision defines pattern to mean any combination of two or more separate instances of the sexual abuse of a minor. I'm having difficulty seeing, maybe the commentary is not the provision itself, but how can you call the abuse of two separate children no matter what the circumstance? Same room within five minutes, they're two separate instances, aren't they? Yes, Your Honor, we would agree with that. We just think that falls closer to the line. You don't even need to get close to the line here because of the breaking conduct, but yes, making two choices to abuse minors would make them separate instances. You have two victims, and as Your Honor said, this is not like a property crime where you go from one to the next, to the next, to the next. This is making an individual choice to harm two children. That all being said, Your Honors, the district court did adopt our papers. It says on page 111 of the record that it was following the reasons in the papers for the government, which laid out in good detail why the enhancement should apply, and our papers did include an alternate theory, which is that V2 was abused on at least one other occasion. I don't disagree that V2's statement alone might not be enough, but here we also have a statement from an adult who saw a concerning incident with V2 the spring before, felt like V2 was trying to tell her something, wasn't able to understand him. All of that together, again, combined with the fact that Bullock admits to being a pedophile and has been for many years, admits to being attracted to specifically children of this age, that is enough for the district court to have concluded, at least for it not to have been clear error for the district court to have concluded by a preponderance of the evidence that he molested V2 on a separate, I will use the word occasion advisedly here, occasion six months prior. Well, you've been pointing out that the district court talks about the victims. Do you think because of that reference to the government's reasons, it determined that there were two victims, but then also that victim two was molested on multiple occasions? That's correct, Your Honor. I'm happy to answer any further questions on the pattern enhancement, otherwise I'll turn to some of the other issues in this case. Just, I'll briefly address the substantive reasonableness of the sentence. I know that Dorvey and Jenkins take a dim view of 2G2.2 in possession and receipt cases where there's no contact. Here, as I've just detailed, there was contact with children. We don't think they apply at all. We also, and Muzio, by the way, says that, Your Honors. The references to the defendant getting treatment, we think the district court properly took into account the fact that treatment had failed and that his motives for treatment appeared to not be pure. We also do not agree that the district court ignored the number of images or the distribution that's calculated in the guideline enhancement. And I would note that ultimately his sentence was 97 months, less than half the statutory maximum, which is certainly not shockingly high for a defendant like this who has molested two children. I'll turn now, if there are no questions on that, to the special conditions. There's challenges to three special conditions in this case. None were objected to below and they were included in the PSR, so the standard of review is plain error. The first is the condition keeping the defendant away from children. In United States v. Peterson and United States v. Dukes, this court held that such conditions are appropriate based on prior instances, even if the defendant's instant conviction is not related to his pedophilia. Here it is. I do have to correct one inaccuracy in our brief on this argument, by the way, your honors. I said that the Thomas case, there was a 39-year gap. It's only a 36-year gap in that case. Still far more than the gap in this case. As regards the adult pornography condition, the district court correctly found that this defendant has moved from legal images to illegal images before and was concerned that it would do so again. At the very least, this court does not have any precedent suggesting that its explanation was insufficient. And as regards the number of devices condition, this defendant has shown a propensity to use any devices he can get his hands on to look at these images. We have a linkage between him looking at these images and harming children, taking steps to ensure that we are able to track the number of devices and able to successfully monitor them and intervene before any further children are hurt was necessary. I'd be happy to take any questions the court may have. Thank you, your honors. First of all, the government is taking the same tact that the district court took in refusing to go below, to a go below guideline sentence. The treatment failed. No, the treatment didn't fail. There was no other incident of him touching a child. He looked, he had occasion to look at child pornography, which was wrong. That doesn't mean the treatment failed. Anyone who's in a 12-step program, sometimes they fight their demons successfully, sometimes they slip. And then what they do is they get up and try and battle the demons again. And in terms of the adult pornography special condition, if you look at what United States v. Eaglin requires, the district court's explanation doesn't meet that. Sorry, what, why is that? I can give you the- Well, what's the reason? I don't need the citation. Okay. Eaglin- So Mr. Rothenberg just said, I mean, there's evidence and there's a psychosocial report or whatever that says, and he even says this, that he's looking at legal images, but it leads him to become interested in illicit images. And so the adult pornography was like a gateway for him into child pornography. So why doesn't it make sense based on that rationale that there should be a condition of not being exposed to that? Because I think there's a flaw that looking at adult pornography will lead to looking at child pornography. I mean, maybe it wouldn't inherently. I don't know. Maybe a different defendant could have a different finding, but here we have a psychosocial report about him that says he did. And he, in fact, even says that that's, that looking at adult pornography led him to become interested in child pornography, right? That I don't recall. Okay. Thank you. Thank you both, and we will take the matter under advisement.